

KAMI.LANE (DCOCVDCVDEEDS3B)c   Enterprise   Contact Us   **Welcome to the District Clerk**

**D**eputy **E**xploration **O**f **E**lectronic **D**ocuments

Search Civil | Search Criminal | Search All | Search Special | Basket | eNotices | Subpoena Search | Docket Call

## Civil Image Search Results

If the case/documents you are looking for is not available, please click here to notify customer service.
The icons in the case header contain various information about the case. Click the icon to display the case information. A legend of the case information is provided here.

To view a document, click the Image Number link. If you wish to download/fax/certify numerous documents, you may select those specific documents using the checkbox at the beginning of the row and click the 'Add To Basket' link in the case header, or you may add all documents from the case by clicking the 'Add Entire Case' button. The documents will be added to your Basket page.

Document information displayed in **RED** indicates the document is sealed.
Document information displayed in **BROWN** indicates the document is confidential.
Document information displayed in **PINK** indicates only page 1 of document can be viewed
Document information displayed in **PURPLE** indicates the document contains sensitive data.

---

Please select a court to generate a document.   ⌄

**Case: 202595044 - 7**

**Court:** 215 **File Dt:** 12/22/2025 **Case Status:** Active - Civil
**Case Type:** PERSONAL INJ (NON-AUTO) **Type of Action:** Other Injury or Damage
**Style:** ROUX, LISA **vs** RAMIREZ, ARIN (DEPUTY)

**Add Entire Case**
Add To Basket

| | Image Number | Pages | Document Type | Activity Type | Activity Date | PJN | Party | |
|---|---|---|---|---|---|---|---|---|
| ☐ | 124472817 | 3 | *Filing* | Citation (Executed) | 1/6/2026 | | | Add To Basket |
| ☐ | 124353827 | 2 | *Filing* | eIssue: Citation | 12/30/2025 | | | Add To Basket |
| ☐ | 124353855 | 2 | *Filing* | eIssue: Citation Corporate | 12/30/2025 | | | Add To Basket |
| ☐ | 124353863 | 2 | *Filing* | eIssue: Citation (NonRb - Corporate) | 12/30/2025 | | | Add To Basket |
| ☐ | 124353877 | 2 | *Filing* | eIssue: Citation Corporate | 12/30/2025 | | | Add To Basket |
| ☐ | 124353881 | 2 | *Filing* | eIssue: Citation | 12/30/2025 | | | Add To Basket |
| ☐ | 124353939 | 2 | *Filing* | eIssue: Citation | 12/30/2025 | | | Add To Basket |
| ☐ | 124354225 | 2 | *Filing* | eIssue: Citation | 12/30/2025 | | | Add To Basket |
| ☐ | 124333649 109481462 | 1 | *Filing* | Civil Request Form-Mint Medical Physician Staffing | 12/29/2025 | | | Add To Basket |
| ☐ | 124333650 109481462 | 1 | *Filing* | Civil Request Form-Harris County | 12/29/2025 | | | Add To Basket |
| ☐ | 124333651 109481462 | 1 | *Filing* | Civil Request Form-Physician Resources, Inc | 12/29/2025 | | | Add To Basket |
| ☐ | 124333652 109481462 | 1 | *Filing* | Civil Request Form-HCA Healthcare, The Corporation Trust Company | 12/29/2025 | | | Add To Basket |
| ☐ | 124333653 109481462 | 1 | *Filing* | Civil Request Form-Dr. Otis Egins | 12/29/2025 | | | Add To Basket |
| ☐ | 124333654 109481462 | 1 | *Filing* | Civil Request Form-District 249 Bar & Grill | 12/29/2025 | | | Add To Basket |
| ☐ | 124333655 109481462 | 1 | *Filing* | Civil Request Form-Deputy Arin Ramirez | 12/29/2025 | | | Add To Basket |
| ☐ | 124333656 109481462 | 1 | *Filing* | Civil Request Form-Sheriff Ed Gonzalez | 12/29/2025 | | | Add To Basket |
| ☐ | 124268254 109346245 | 52 | *Filing* | Plaintiffs Original Petition | 12/22/2025 | | GONZALEZ, ED (SHERIFF) | Add To Basket |

C I V I L

M E N U

Case 4:26-cv-00782    Document 1-2    Filed 02/02/26 in TXSD    Page 2 of 58

12/22/2025 4:18 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 109346245
By: Jarod Stirrup
Filed: 12/22/2025 4:18 AM

CAUSE NO. _____

| | | |
|---|---|---|
| C. ROUX; LISA ROUX; AND TROY ROUX, | § | IN THE  JUDICIAL CIVIL |
|     Plaintiffs, | § | |
| v. | § | ____ JUDICIAL DISTRICT |
| HARRIS COUNTY, TEXAS; DEPUTY ARIN RAMIREZ; | § | |
| SHERIFF ED GONZALEZ; HCA HEALTHCARE, DR. OTIS EGINS, | § | HARRIS COUNTY, TEXAS |
| PHYSICIAN RESOURCES, INC. MINT MEDICAL PHYSICIAN STAFFING, LP DBA MINT PHYSICIAN STAFFING; AND DISTRICT 249 BAR & GRILL, | § | |
|     Defendants. | § | |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs C. Roux and his parents, Lisa and Troy Roux, (collectively, "Plaintiffs") file this Original Petition complaining of Harris County, Texas, Deputy Arin Ramirez, Harris County Sheriff Ed Gonzalez, HCA Healthcare, Harris County Jail Medical Director, Dr. Otis Egins, Physician Resources, Inc. Mint Medical Physician Staffing, LP dba Mint Physician Staffing, and District 249 Bar & Grill("District 249" herein), and in support thereof show as follows:

### Discovery Control Plan

Plaintiffs intend to conduct discovery under Level 3 (Tex. R. Civ. P. 190.4). Given the nature of the case and the amount of damages sought, Plaintiffs affirmatively plead that this suit is not subject to the expedited actions process of Rule 169. As required by Tex. R. Civ. P. 47(c), Plaintiffs seek monetary relief over $1,000,000, including economic and non-economic damages and penalties, attorney fees under DPTA and 42 USC 1988, as well as non-monetary relief. Plaintiffs also seek all other relief to which they are justly entitled.

## Parties

Plaintiff C. Roux is an individual residing in Harris County, Texas.

Plaintiff Lisa Roux  is an individual residing in Harris County, Texas.

Plaintiff Troy Roux  is an individual residing in Harris County, Texas.

Plaintiffs Lisa and Troy Roux are the parents of C. Roux (collectively "Parents" or "Mr. and Mrs. Roux"), residing in Texas. They bring claims both individually (for interference with their familial relationship and damages incurred in supporting Mr. Roux's medical care) and as co-plaintiffs alongside their son.

Defendant Harris County, Texas ("Harris County" or "the County") is a Texas governmental unit that oversees the Harris County Sheriff's Office and the Harris County Jail, and it may be served with process by serving the Harris County Judge, Lina Hildalgo. Harris County is responsible for the policies, lack of policies, practices, patterns *or* customs of the Sheriff's Office and Jail, and it is a proper defendant for claims under the Texas Tort Claims Act and 42 U.S.C. § 1983.

Defendant Deputy Arin Ramirez is an individual who at all relevant times was employed as a deputy by the Harris County Sheriff's Office. Upon information and belief, Deputy Ramirez was working an approved off-duty security job at District 249 at the time of the incident in question. He is sued in his individual capacity for violations of clearly established constitutional rights, assault and battery, and may be served at the Harris County Sheriff's Office or wherever he may be found.

Defendant Sheriff Ed Gonzalez is the elected Sheriff of Harris County and was so at the time of the incident. Sheriff Gonzalez is the final policymaker for law enforcement and jail operations in Harris County. He is named in both his official capacity (for the §1983 claims effectively against Harris County) and in his individual capacity to the extent he was personally involved in failures, acts and omissions resulting in a deliberately indifferent act  and violations. He may be served at the Harris County Sheriff's Office, 1200 Baker Street, Houston, Texas 77002.

Certified Document Number: 124268254 - Page 2 of 52

Defendant Harris County Jail Medical Director, Dr. Otis Egins, serving as the Chief Medical Officer for Harris Health Correctional Health, is the person in charge of medical care at the Harris County Jail at relevant times. This Defendant is responsible for establishing and supervising medical policies for inmates and for the actions of jail medical staff. He/She is sued in his/her individual capacity under §1983 for deliberate indifference to medical needs, and in his/her official capacity (which is effectively a claim against Harris County). This Defendant may be served at the Harris County Sheriff's Office or jail administration offices. Upon learning this Defendant's name, Plaintiffs will amend to state it.

Defendant District 249 Bar & Grill is a Texas bar and grill establishment located at 23238 State Highway 249, Tomball, Texas 77375. District 249 is believed to be owned and/or operated by a Texas business entity. It may be served via its owner or registered agent once identified. For purposes of this petition, "District 249" refers to the establishment and its owning entity. District 249 is a private non-governmental defendant.

Defendant Harris County Jail Medical Director, Dr. Otis Egins,

Physician Resources, Inc. Temporary Locum Tenens Coverage for Harris Health System tasked with providing physician medical and pharmacy services to the Harris County jail in December 2023.

Mint Medical Physician Staffing, LP dba Mint Physician Staffing, Temporary Locum Tenens Coverage for Harris Health System tasked with providing physician medical and pharmacy services to the Harris County jail in December 2023

HCA Healthcare, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801

**Jurisdiction and Venue**

Certified Document Number: 124268254 - Page 3 of 52

3

This Court has subject-matter jurisdiction over this lawsuit. The amount in controversy exceeds the minimum jurisdictional limits of the District Courts of Texas. Plaintiffs assert claims under Texas state law (including the Texas Tort Claims Act) and under federal law (42 U.S.C. § 1983). Texas state courts have concurrent jurisdiction over §1983 claims, and Plaintiffs hereby invoke this Court's jurisdiction to adjudicate those federal claims alongside the state claims. No federal question jurisdiction need be invoked in federal court since Plaintiffs elect to proceed in Texas state court; thus all claims are properly before this Court.

The Court has personal jurisdiction over the Defendants: Harris County is a local governmental entity in Texas; the individual Defendants are Texas residents or employees acting in Texas; and the District 249 entity does business in Texas.

Venue is proper in Harris County under Tex. Civ. Prac. & Rem. Code §§ 15.002 and 101.102. Harris County is the location where all or a substantial part of the events giving rise to the claims occurred. The shooting and initial injuries occurred in Harris County (near Tomball, in northwest Harris County), and the subsequent denial of medical care and familial association occurred at the Harris County Jail and affiliated medical facilities in Harris County. Furthermore, Harris County is the principal place of business of the County itself and of the Harris County Sheriff's Office. Accordingly, venue in this Harris County District Court is proper.

Plaintiffs have satisfied (or alternatively, Harris County has waived) any pre-suit notice requirements applicable to the Texas Tort Claims Act. Pursuant to Tex. Civ. Prac. & Rem. Code § 101.101, Plaintiffs provided written notice to Harris County of their claims within the required timeframe, or Harris County had actual notice of the claims and injury. The incident was immediately investigated by the Harris County Sheriff's Office and publicly commented upon by Sheriff Gonzalez, demonstrating the County's actual knowledge of the incident and Mr. Roux's injuries. All conditions precedent to filing this suit have been performed, have occurred, or have been waived.

Certified Document Number: 124268254 - Page 4 of 52

4

### **Factual Background**

The Shooting of Mr. Roux by Deputy Arin Ramirez on or about December 23, 2023. Plaintiff Mr. Roux was a patron at District 249 Bar & Grill in northwest Harris County, Texas. In the early morning hours, shortly after 1:00 a.m., an incident arose at the bar. A disturbance or confrontation that began inside the bar was escalated and allowed to spill outside into the parking lot, in part due to the bar's mishandling of the situation. Specifically, District 249's management violated its own safety protocol by ejecting Chance and the other involved patrons at the same time, rather than staggering their departure; this meant that the hostile individuals who had confronted Chance inside were permitted to follow him immediately outside. This failure to keep the feuding parties separated created a volatile and dangerous situation.

At the time, Defendant Deputy Arin Ramirez, a Harris County Sheriff's deputy, was working an off-duty security job at District 249, with HCSO approval. Upon the disturbance moving outside, Defendant Ramirez, and another off-duty deputy also present intervened in the parking lot. According to subsequent false reports, Mr. Roux  displayed a firearm during the confrontation. Sheriff Ed Gonzalez publicly stated that a man "pulled out a pistol" and refused orders to put it down, at which point a deputy discharged his weapon, shooting the man. Deputy Ramirez was the deputy who fired his gun, shooting Mr. Roux. This was false information.

Plaintiffs vehemently dispute the official characterization of the incident. Mr. Roux was not a threat of any kind  at the time he was shot. In fact, Chance never had a gun in his hand and therefore never pointed a gun at Ramirez or anyone else during the altercation. Surveillance video from the parking lot confirms that Chance did not have a firearm in his hands in the moments leading up to the shooting. Chance was attempting to defuse the situation and was retreating when the shooting occurred. Chance had been carrying a handgun holstered on his hip, openly, as permitted by Texas

law. He never raised or aimed it at anyone including the deputies; instead, when the confrontation escalated, he began to retreat for his own safety.

Despite the lack of an active threat, Ramirez opened fire on Chance. In a rapid and unjustified use of lethal force, Ramirez unloaded multiple gunshots at Chance as Chance turned and ran. At least one bullet struck Chance in the abdomen, causing a catastrophic injury, and another round grazed his arm. Chance's back was turned when additional shots were fired by Deputy Ramirez. The fact that Chance was shot while fleeing strongly indicates that he did not pose a direct threat to the deputy at that time, rendering the use of deadly force excessive and objectively unreasonable.

Mr. Roux collapsed from his injuries. He suffered massive internal injuries and blood loss. He was transported from the scene to HCA Tomball hospital in critical condition. Emergency surgery and extensive medical intervention were required to save his life. Chance's survival was nothing short of miraculous given the severity of his wounds and blood loss. Chance spent an extended period in the hospital, including intensive care. He endured great physical pain, multiple surgical procedures, and remains scarred and impaired from the shooting.

After the shooting, law enforcement treated Chance not as a victim but as a criminal suspect. An arrest warrant was obtained three days after Chance was hospitalized. As soon as he was sufficiently stabilized, he was placed under arrest while in his hospital bed on false charges including aggravated assault on a peace officer. Upon discharge from the hospital, Chance was taken into custody at the Harris County Jail. He remained in jail for over 24 hours until his family could arrange a bond for his release, while still in need of medical care for his serious medical needs.

During Chance's period of custody, the time in the jail's medical unit, the Harris County Sheriff's Office and jail staff failed to provide adequate medical care for his serious medical needs although the need was obvious and detailed in the discharge records from HCA. Chance had extensive surgical wounds and ongoing medical needs, such as wound care, pain management, blood clots and

infection prevention, as a result of the gunshot. Yet, while in custody, he did not receive the level of care that a patient with such injuries required. There were significant delays and omissions in treatment, prescribed eliquis, an anti-coagulate to prevent blood clots, necessary wound dressings and cleansing were not performed with the required frequency, and at times Chance's requests for pain medication or medical attention went unheeded. HCA medical staff discharged him from the hospital to the jail prematurely or without proper follow-up.. The Sheriff's Office actively interfered with Chance's family's ability to obtain information and comfort him during this post-shooting ordeal. When Chance was first hospitalized, his parents rushed to the hospital fearing for his life. Shockingly, Harris County Sheriff's deputies blocked Chance's parents from seeing him. Despite the fact that Chance was in critical condition and his mother feared he might die, officials told the Roux family that they were not allowed to visit him in the hospital. In fact, a deputy on duty warned the parents that they would be arrested if they came to the hospital again in an attempt to see their son. HCA acted in concert and threatened Chances' family members including his parents with arrest for attempting to visit and call and check on Chance for updates on his condition while he was in the intensive care unit.  This cruel and outrageous threat, essentially criminalizing a mother's effort to see her gravely wounded child, caused the parents extreme emotional distress. They were forced to wait and worry with little to no information about Chance's condition.

As Chance's custody continued, the flow of information to his parents was obstructed by the authorities. When the Roux parents called the jail and hospital seeking updates, they often were given misleading information or none at all. At one point, Harris County's records system did not even show that Chance was in custody and officials falsely told the family that "he wasn't there." In reality, Chance had been transferred between facilities for medical reasons, but HCA and the Sheriff's Office failed to inform his parents of his whereabouts or condition. The family was essentially kept in the dark while their son was suffering serious medical needs.

Ultimately, after some days, the Roux family promptly posted bond to secure Chance's release from custody specifically because they feared for his health in the jail, and rightfully so since he was not receiving any of the ordered discharge medications. Only once he was out were they able to obtain proper medical follow-up. The Parents personally had to arrange for ongoing wound care and treatment for Chance for months after his release, incurring significant expense and effort, which would not have been necessary had the jail provided timely and adequate medical care and Chance would not have developed life threatening and painful blood clots. During the entire ordeal, the Parents experienced profound emotional anguish due to the denial of any contact or communication with their son and the distress of knowing he was badly injured and not receiving appropriate care.

Sheriff Ed Gonzalez, as Harris County's final policymaker in the area of law enforcement, was personally and immediately aware of the shooting incident. Sheriff Gonzalez publicly addressed the shooting in statements to the media on the very day it happened, describing the basic but false information on the events that an off-duty deputy working security shot a man who allegedly refused to drop a weapon. By making such false statements, Sheriff Gonzalez put his imprimatur on Ramirez's version of events. Before any thorough investigation or independent review, the Sheriff essentially justified the shooting by repeating that the suspect had a gun and did not comply. This public stance by the County's final policymaker was ratification or endorsement of Deputy Ramirez's conduct, even though evidence later showed that key details of the deputy's account were false. Even after learning of the false information, Gonzalez immediately adopted and publicized the deputy's narrative, instead of withholding comment or acknowledging the need for an unbiased investigation, Sheriff Gonzalez and Harris County demonstrated a predisposition to condone the use of deadly force in this incident without scrutiny depriving the Roux of due process..

Information later emerged that Ramirez had been involved in at least one other shooting incident within just a few months prior to the District 249 shooting, and several arrests without probable

cause. In fact, Ramirez, who had only about a year of experience with HCSO, had discharged his firearm in the line of duty twice in the span of three months. This is an extraordinarily rare occurrence; statistically, the vast majority of officers never fire their service weapon at a suspect in their entire career. The fact that Deputy Ramirez did so twice in a short period should have been a major red flag to HCSO leadership. Such a pattern strongly suggests either that Ramirez was inadequately trained in de-escalation and use-of-force protocols, or that he had a propensity to resort to lethal force in situations where it was not warranted. Harris County, through Sheriff Gonzalez and command staff, knew or should have known of Ramirez's first shooting incident, which occurred shortly before the District 249 incident, and yet apparently took no sufficient action, such as additional training, counseling, or closer supervision, to prevent a recurrence. This failure to supervise or discipline Deputy Ramirez after the first incident was a moving force behind the second shooting of Mr. Roux.

Harris County Sheriff's Office has an extra-job program that allows deputies to work security jobs at private establishments like District 249. HCSO's policies require approval and supposedly impose rules on deputies' conduct during these jobs. Upon information and belief, Harris County failed to adequately set forth policies regarding off-duty security work. For example, if Deputy Ramirez was inexperienced or had a history of overreaction, he should not have been placed, or allowed to remain, in a volatile bar environment without supervision. Harris County did not ensure that off-duty deputies working as security had proper training or oversight for that role. The situation at District 249 on December 23, 2023, where two off-duty deputies were left to handle a bar brawl in a parking lot, demonstrates a lack of supervision, which is a County policy failure in and of itself.

Harris County and Sheriff Gonzalez's acts and omissions, before, during, and after the shooting, directly contributed to the violations of Plaintiffs' rights and the damages suffered. The County's

policy or custom of rubber-stamping officer-involved shootings and failing to correct dangerous tendencies in its deputies and false arrest set the stage for Deputy Ramirez's constitutional violations. Harris County's own written policy affirmatively requires that the Sheriff be notified of all complaints, investigations, and allegations of misconduct arising out of arrests, use of force, or citizen interactions in HCSO Department Policy 231, "Internal Investigations") provides that "The OIG commander or his or her designee will have direct access to the Sheriff or his or her designee to inform him or her of both newly-initiated complaints and the status of ongoing investigations." This language creates a direct, formalized, and non-discretionary channel through which every misconduct complaint, including complaints arising from arrests without probable cause, improper detentions, fabrication of charges, unlawful use of force, falsified offense reports, and abusive conduct by deputies, must be brought to the attention of the Sheriff or the Sheriff's authorized policymaker designee. Thus: Repeat arrests found by magistrates and prosecutors to lack probable cause necessarily trigger complaint procedures under HCSO's written policy. The OIG is required to notify the Sheriff of those investigations. HCSO's policy demonstrates delegation, mandatory knowledge, and policymaker oversight. The Sheriff is not merely "in charge." He is the final authority in the internal investigation hierarchy and the required recipient of every misconduct notification. According to the HCSO policy every complaint must go to the Sheriff.HCSO polices over 4 million residents across 1,700+ square miles. It employs an estimated 2500 sworn deputies. Sheriff Ed Gonzalez had actual or constructive knowledge of the pattern of unlawful arrests, yet failed to take corrective steps, making Harris County liable under Monell for an unconstitutional custom, failure to supervise, failure to discipline, and ratification.

The County's deliberate choices in failing to train or supervise its officers and its decisions in managing inmate medical care and family access have given rise to the Roux constitutional civil rights being violated.

10

## Causes of Action

Plaintiffs hereby incorporate by reference all the allegations in the preceding paragraphs as though fully set forth under each of the following causes of action.

### Excessive Force Claims  Against Deputy Arin Ramirez

Plaintiff C. Roux brings a claim against Defendant Arin Ramirez under 42 U.S.C. § 1983 for violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, actionable in this Court. At all relevant times, Deputy Ramirez was acting under color of state law. Though off-duty, he was performing security service in his capacity as a licensed peace officer, as a Harris County deputy. His actions thus constitute state action for purposes of §1983.

Deputy Ramirez's use of deadly force against Mr. Roux was objectively unreasonable and unconstitutional. The Fourth Amendment, applicable to the states via the Fourteenth Amendment, protects individuals from excessive or unreasonable force by law enforcement. Mr. Roux had a clearly established right to be free from the use of deadly force absent an immediate threat of serious harm. At the time Deputy Ramirez fired at Chance, Chance was not posing an immediate threat. He did not have a weapon pointed at anyone. Under the clearly established law *Tennessee v. Garner,* 471 U.S. 1 (1985), an officer cannot lawfully shoot a fleeing suspect in the back unless that suspect poses a significant threat of death or serious physical injury to the officer or others. No such threat existed here. Any claim by Ramirez that Chance was turning to fire a weapon is flatly contradicted by the video evidence, which shows Chance never aimed a gun at the deputy. Indeed, a reasonable deputy who was also on the scene did not fire his weapon at all, indicating that on its face that an officer in the same situation did not perceive a need for lethal force.

Deputy Ramirez intentionally discharged his firearm multiple times at Mr. Roux, striking him and causing severe injuries. This use of force was clearly excessive to the need and was not justified

Certified Document Number: 124268254 - Page 11 of 52

11

under the circumstances. By shooting an unarmed or non-threatening fleeing person, Deputy Ramirez violated Chance's Fourth Amendment right to be secure in his person against unreasonable seizures. The shots fired after Chance had turned to run were especially egregious, once Chance was retreating, any arguable threat was diffused, yet Ramirez continued to shoot, which exhibits an unreasonable and malicious application of deadly force.

As a direct and proximate result of Deputy Ramirez's excessive force, Mr. Roux suffered grievous injuries, including a gunshot wound to the abdomen requiring emergency surgery, significant blood loss, permanent scarring, and other physical and mental damages. The conduct was a factual and proximate cause of harm to Chance. Deputy Ramirez's actions were willful, wanton, and done with reckless disregard for the life and rights of Mr. Roux, thus justifying the imposition of punitive damages under §1983.

Deputy Ramirez is not entitled to qualified immunity because his conduct violated clearly established law. No reasonable officer could believe that shooting a retreating, non-threatening suspect is lawful. The rights at issue were well-defined, and any officer in Deputy Ramirez's position would have known that the use of deadly force in this situation was unconstitutional.

### *Failure to Supervise, Discipline, Investigate, Train and Municipal Liability (42 U.S.C. § 1983), Against Harris County and Sheriff Ed Gonzalez*

Plaintiffs C. Roux and his parents bring claims under 42 U.S.C. § 1983 against Harris County and Sheriff Ed Gonzalez, in his official capacity as final policymaker for the County, and in his individual capacity to the extent of any personal involvement, for the constitutional violations resulting from the County's policies, practices, or failures in supervision and training.

Harris County is liable for constitutional violation caused by an official policy, lack of policy, practice, pattern, a longstanding custom of the County, *or (not and)* by the acts of an official policymaker. Here, the excessive force against Mr. Roux and the subsequent violations denial of

Certified Document Number: 124268254 - Page 12 of 52

medical care and familial association were a direct result of Harris County's deliberate indifference and its policies, lack of policies, practices.

### Failure to Train/Supervise Deputies in Use of Force

Harris County, acting through Sheriff Gonzalez and the Sheriff's Office, failed to adequately train and supervise Deputy Ramirez (and other deputies) in the proper use of force and de-escalation techniques. The necessity of training officers on the constitutional limits of deadly force is obvious. Harris County's training on dealing with armed confrontations in crowd settings (such as bar disturbances) was either grossly deficient or was not followed. Likewise, supervision of deputies working off-duty security jobs was effectively nonexistent, an arrangement that presented a known risk that deputies might act without proper oversight. The County knew that Deputy Ramirez was a relatively inexperienced officer and was aware that he had already fired on a suspect in a prior incident just a few months earlier. This prior incident put the County on notice that Ramirez potentially had a propensity for using deadly force. Despite this, the County took no meaningful steps to retrain, counsel, or monitor Ramirez after the first shooting. Allowing him to continue in a similar role without intervention was deliberately indifferent to the known risk that he would engage in another unjustified shooting. This failure to supervise/training deficiency was a moving force behind the violation of Mr. Roux's rights, in other words, had Harris County provided proper training and oversight, it is highly likely the excessive force would not have occurred.

### Policy or Custom of Condoning Excessive Force, Ratification

Harris County, by and through Sheriff Gonzalez, also exhibited a policy or custom of condoning or ratifying unconstitutional uses of force. Sheriff Gonzalez's immediate public endorsement of Deputy Ramirez's version of events (framing the shooting as justified because the suspect allegedly refused to drop a gun) demonstrates the County's tendency to reflexively side with the officer without due scrutiny. Moreover, after the incident, upon information and belief, Harris County did not discipline

Certified Document Number: 124268254 - Page 13 of 52

Deputy Ramirez for shooting Mr. Roux; instead, it treated the shooting as justified, implicitly or explicitly. In the context of Monell liability, a final policymaker's ratification of an employee's obviously wrongful act can serve as proof of an official policy of the entity. Here, Sheriff Gonzalez, the final policymaker for Harris County law enforcement, had direct knowledge of Ramirez's actions and the factual circumstances, yet in statements and inaction effectively approved those actions. This ratification is further evidenced by the lack of any corrective measures: Deputy Ramirez was not terminated or seriously reprimanded, and the Sheriff's Office's public narrative did not change even when evidence arose that Chance did not point a weapon. The County's highest official effectively signaled that shooting a fleeing suspect under questionable circumstances was within policy. Such a message from leadership constitutes an official policy or, at minimum, a tolerated custom that moving forward officers will not be held accountable for excessive force. This policy of indifference to excessive force was a proximate cause of Plaintiff's injuries, because it encouraged or at least allowed deputies like Ramirez to believe they could act with impunity. In other words, Harris County's tacit approval of past excessive force incidents, including Ramirez's prior shooting and unlawful arrests, and its handling of this incident reflect a custom that led to the deprivation of Chance's rights.

Plaintiffs plead far more than a single isolated incident. They point to the pattern of two shootings in three months by the same deputy, sufficient to indicate a lack of proper training/supervision, and to Sheriff Gonzalez's direct involvement in affirming the officer's conduct, a policymaker's act by Gonzalez. Unlike cases where no genuine issue of policy can be shown. The facts here demonstrate an entrenched problem and deliberate indifference by the County.

Harris County's failures and policies were moving forces behind the constitutional violations. But for the County's failure to train and supervise, Deputy Ramirez might not have resorted to excessive force; but for the County's ratification/custom of excusing such force, Ramirez may have been

deterred from acting as he did. The link between the County's conduct and the injury to Mr. Roux is direct and evident and the moving force behind the plaintiffs' rights being violated.

Harris County and Sheriff Gonzalez are liable under §1983 for the excessive force, false arrest, malicious prosecution and related constitutional harms suffered by Mr. Roux. Plaintiff C. Roux seeks to recover against the County all compensatory damages allowed by law for his injuries. These include medical expenses, lost income, pain and suffering, mental anguish, and other non-economic damages. Plaintiff also seeks punitive damages against Sheriff Gonzalez in his individual capacity for any role he played with deliberate indifference. The relief sought from Harris County is compensatory damages and injunctive/equitable relief.

Gonzalez never takes a look in the mirror for things that he can do to prevent or review how the officers actions contributed to constitutional violations but glosses is over them, overlooks them

### *Deliberate Indifference to Serious Medical Needs (42 U.S.C. § 1983),  Against Harris County Jail Medical Director and Harris County*

Plaintiff C. Roux additionally brings a §1983 claim for denial of medical care against the Harris County Jail Medical Director (in his/her individual capacity) and against Harris County (via official-capacity claim), for violation of Chance's rights under the Fourteenth Amendment. Because Chance was a pretrial detainee at the time (having been arrested but not convicted), his right to medical care is secured by the Due Process Clause of the Fourteenth Amendment, which at least equals the Eighth Amendment standards afforded to convicted prisoners. It is clearly established that detainees have a right to timely and adequate medical care for serious health needs, and that jail officials violate the Constitution by acting with deliberate indifference to an inmate's serious medical condition.

Chance had an obviously serious medical condition: he was a gunshot wound patient, fresh out of major surgery, with severe injuries, including blood clots, internal organ damage, risk of hemorrhage

Certified Document Number: 124268254 - Page 15 of 52

or infection, and significant pain. This was known to all jail officials and medical staff involved, including the Jail Medical Director. Despite this, the care provided to Chance in custody fell woefully below constitutional standards. Plaintiffs have alleged numerous specific lapses: e.g., failure to follow hospital discharge instructions for wound care, failure to timely change dressings or provide medications, delaying or denying responses to Chance's complaints of severe pain and signs of complications, and prematurely removing him from hospital observation to the jail without proper medical clearance. These actions and omissions demonstrate deliberate indifference. The officials knew of and disregarded an excessive risk to Chance's health because they had custody of all of Chance's hospital discharge paperwork. Chance's condition was such that any layperson would recognize the need for prompt medical attention; indeed, his mother and family were so alarmed by the neglect that they scrambled to get him out on bond to see to his care. Internal jail records and subsequent medical evaluations will confirm that Chance's wounds were not being properly managed in the jail, which could have led to life-threatening infection or other harm.

The Harris County Jail Medical Director, as the supervising authority over medical care, knowingly failed to ensure Chance received necessary care. Whether through direct involvement or through setting policies that resulted in inadequate care, this Defendant violated Chance's rights. If Chance's medical requests or needs were denied by subordinate staff, that was due to a culture or directive within the jail for which the Medical Director is responsible. There may have also been a failure to properly train jail medical staff on handling a post-surgical gunshot patient. Furthermore, the jail's administrative decision to keep Chance's family uninformed and even deny that he was present exacerbated the situation, as it prevented outside advocates from intervening on his behalf.

Harris County is also liable for this denial of medical care under Monell, as it stems from either a policy or a well-settled practice of the Jail. It is known that Harris County Jail has faced prior lawsuits and complaints about inadequate inmate medical treatment. The indifference to Chance's

care is consistent with a possible pattern. At minimum, the Medical Director's actions and omissions in this instance reflect the policy of the entity, since the Medical Director would be an official carrying out County policy in the realm of inmate healthcare.

As a result of the deliberate indifference to his medical needs, Chance suffered prolonged pain, risk of infection, and emotional distress, and his healing process was impeded. He had to undergo additional treatments and endure hardship that could have been mitigated with proper care. This violation of his Fourteenth Amendment rights entitles him to recover damages under §1983. Plaintiff C. Roux seeks compensatory damages against the Jail Medical Director in his individual capacity for pain and suffering and related harm caused by the lack of care. Additionally, because the conduct showed reckless or callous disregard for his rights and wellbeing, punitive damages are sought against the Medical Director individually to punish and deter such conduct.

### Denial of Right to Familial Association (42 U.S.C. § 1983), Against Harris County, Sheriff Ed Gonzalez and HCA.

Plaintiffs (including Mr. and Mrs. Roux) bring a claim under 42 U.S.C. § 1983 against Harris County and Sheriff Ed Gonzalez for violation of their constitutional right to familial association and integrity. The Supreme Court and Fifth Circuit have recognized that the Constitution protects the liberty interest of parents in the companionship, care, custody, and association with their children. *Troxel v. Granville,* 530 U.S. 57 (2000); *Stanley v. Illinois,* 405 U.S. 645 (1972)). Grounded in the Fourteenth Amendment's Due Process Clause and the First Amendment's freedom of association, which can be violated by unwarranted government interference. Mr. Roux thankfully survived, but Harris County, through its Sheriff's Office, HCA, and jailers, actively impeded the Parents' ability to be with and support their son during a time of critical injury, effectively depriving them of their familial relationship in that period.

The actions of the Sheriff's deputies and jail officials in barring the Parents from visiting Chance, threatening them with arrest for trying to see him, and withholding basic information about his condition and location were arbitrary and conscience-shocking. There was no legitimate justification to keep loving parents away from an adult son who was in critical condition, especially after the immediate investigatory needs at the hospital had passed. Even if Chance was in custody, the Sheriff's Office had the discretion to permit hospital visitation by immediate family since Chance was incapacitated and under guard. Instead, officials chose total isolation of Chance from his family, inflicting immense emotional pain on both Chance and his parents. This severe infringement on the family relationship was deliberate, punitive, and unrelated to any valid penological or investigative interest or purpose done with malice to pressure Chance to discharge himself prematurely only to be tricked and taken into the Harris County jail and initially directed to general population. It violated fundamental substantive due process rights.

Sheriff Ed Gonzalez, as the policy maker for Harris County in the area of law enforcement, is sued in his official and individual capacities for this violation. This harm resulted from either an official policy or, at least, a custom/practice of the Harris County Sheriff's Office. HCSO has an unofficial practice of prohibiting family access to detainees who are hospitalized, and even of threatening arrest to discourage interference threatening disabled inmates admitted to the hospital differently than inmates who are not disabled, allowing visitation for at least 30 minutes per week. In fact, such heavy-handed measures have happened to other families in similar situations, indicating a pattern, as one parent was told by officials, this has "happened to so many people" before. If Sheriff's deputies routinely guard hospitalized inmates with zero tolerance for family visits, that practice should be recognized as a practice attributable to the County. Harris County, through its policymakers, either directly ordered or implicitly allowed the conduct that occurred here. In one particular case involving

Tony Underwood's family, his mother was forced to get a court order just to visit her dying son who had been rendered a quadriplegic after an officer involved shooting.

Arin Ramirez had a history of going unpunished or disciplined for their unlawful actions including the use of excessive force and unlawful arrest. For example, on August 18, 2023, Ramirez, falsely arrested Muzette Regina Pace for failure to identify to police officers the case was dismissed for insufficient evidence on December 13, 2023, just months before falsely arresting Chance.

These unlawful actions by Ramirez occurred prior to December 23, 2023, and had Sheriff Gonzalez or Harris County addressed their actions the Chance would not have been unlawfully detained or arrested out of concern they would again face discipline or have to go back to training. And would not have used unlawful excessive force.

Although the above actions by Ramirez is limited, reflecting actions by only a gew instances by Ramirez, of the approximately 2,500 sworn officers in Harris County between 2019 and 2023, there are many other cases involving arrest for crimes where officers act as the complaining witnesses that are dismissed for lack of probable cause.

There are a significant number that are wholly preventable violations with responses after the first violations with additional training, retraining, or disciplining officers for intentional unlawful arrests.

There are additional examples of other deputies who have engaged in unlawful practices of arrest without probable cause and unlawful use of force which if responded to appropriately by Harris County or Ed Gonzalez could have served as disciplinary examples that arresting

individuals in violation of the HCSO policies and the constitution will not be met with deliberate indifference and will result in discipline by Harris County or Ed Gonzalez.

There are a significant number of wholly preventable constitutional violations that could and should have been corrected after the first few occurrences through additional training, retraining, or discipline of officers who engage in intentional unlawful arrests.

Instead, Harris County and Sheriff González have tolerated repeat violations. Harris County is not a small department where occasional errors can be dismissed as statistical noise.

The Harris County Sheriff's Office is the largest sheriff's office in Texas and one of the largest in the United States, serving well over four million residents across more than 1,700 square miles with thousands of sworn deputies. In an agency of this size, the concentration of repeated arrests without probable cause, and repeated dismissals for lack of probable cause, is powerful evidence of a persistent and widespread practice that policymakers knew about and chose not to correct. Harris County is one of the nation's largest sheriff's offices, making the absence of discipline in the face of this record itself proof of official custom and deliberate indifference.

There are additional examples of deputies who have repeatedly engaged in unlawful arrest practices, arrests without probable cause and unlawful use of force, that should have served as clear disciplinary examples, making it obvious throughout the ranks that arrests in violation of the Constitution will not be tolerated. Instead, they were ignored and the moving force behind Chance's arrest. Additional examples include:

On 5/4/2022, GERMAN, GADDIEL GAREB was arrested by Deputy Christian Villanueva for interfering with the duties of a public servant. Villanueva also acted as the

Certified Document Number: 124268254 - Page 20 of 52

complaining witness. On 11/17/2022, the case was dismissed because the judge found no probable cause.

On 7/12/2023, FORD, KENNETH W was arrested by Villanueva for assault of a peace officer. Villanueva also acted as the complaining witness. On 7/12/2023, the case was dismissed because the prosecutor determined there was no evidence of guilt.

On 12/28/2024, GALCIA, ADOLFO was arrested by Villanueva for evading arrest/detention. Villanueva also acted as the complaining witness. On 12/29/2024, the case was dismissed because the judge found no probable cause.

On 2/9/2024, FRAUSTO, DAVID was arrested by Villanueva for evading arrest. Villanueva also acted as the complaining witness. On 2/22/2024, the case was dismissed because the judge found no probable cause.

On 3/19/2019, MCCADAMS, MELVIN was arrested for evading arrest/detention by Deputy Christopher Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 2/19/2021, LAZARD, QUINTON was arrested for interfering with duties of a public servant by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 3/7/2021, GUTIERREZ, PRISCILLA was arrested for interfering with duties of a public servant by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

Certified Document Number: 124268254 - Page 21 of 52

On 3/11/2022, HERNANDEZ-JUAREZ, ANGEL was arrested for failing to identify to a police officer / false information by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 2/12/2022, LEE, ELIJAH M was arrested for interfering with duties of a public servant by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 9/5/2020, MARTINEZ, ASHLEY was arrested for evading arrest/detention with a vehicle by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 4/21/2020, BOOKER, JEREMIAH was arrested for interfering with duties of a public servant by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 8/28/2020, RINCHIUSO, FRANCIS was arrested for interfering with duties of a public servant by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 2/26/2021, LOVELY, JAIONDRICK was arrested for interfering with duties of a public servant by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 11/11/2022, PARKS, JOSEPH was arrested for failing to identify to a police officer / false information by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 1/15/2022, MILLIGAN, ASHLYN was arrested for resisting arrest/search by Bolin, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt, which would have resulted in acquittal at trial.

On 10/14/2020, SCOTT, BRANDON was arrested for evading arrest/detention with a vehicle by Bolin, who also acted as the complaining witness. The case was dismissed because the charge could not be proven beyond a reasonable doubt.

On 12/5/2022, MAYES, JOLANIE was arrested for evading arrest/detention with a vehicle by Bolin, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 4/7/2023, PALUMBO, SETH was arrested for assault of a peace officer by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 4/7/2023, WILLIS, KRISTOPHER was arrested for obstruction of a roadway by Bolin, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 2/24/2021, RHEM, JOCEE JADA LEE was arrested for evading arrest/detention by Deputy Shane Wyrick, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 5/10/2022, THEUS, PATRICK BERNARD was arrested for failing to identify to a police officer / false information by Wyrick, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 12/2/2022, LUTHI, KAITLYN was arrested for evading arrest/detention by Wyrick, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 4/29/2021, MORENO, DAVIDENTIFY VICTOR was arrested for failing to identify to a police officer / false information by Wyrick, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 8/22/2021, STEVENSON, RAYQUAN COUVISIA KURTI was arrested for evading arrest/detention by Wyrick, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 8/19/2021, REED, WILBERT DIONDRE was arrested for evading arrest/detention with a vehicle by Wyrick, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 4/13/2023, BENNETT, CHAKRIS LEE was arrested for resisting arrest/search by Wyrick, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 2/8/2023, BOLT, MARCUS TYRONE was arrested for evading arrest/detention by Wyrick, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 4/5/2023, RADLOFF, ERIC NORMAN was arrested for evading arrest/detention by Wyrick, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

Certified Document Number: 124268254 - Page 24 of 52

On 9/11/2023, BROWN, COREY LAMOND was arrested for failing to identify to a police officer / false information by Wyrick, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 2/23/2024, JONES, PHILLIP was arrested for evading arrest/detention by Wyrick, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 10/1/2024, VAUGHNER, DAMONE TERRELL was arrested for evading arrest/detention by Wyrick, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 11/19/2019, COSME, EDWIN was arrested for assault of a peace officer by Deputy Anthony Macias, who also acted as the complaining witness. The case was dismissed because it could not be proven beyond a reasonable doubt.

On 12/14/2020, FLORES, ERNESTO JR was arrested for assault of a peace officer by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 5/23/2020, SHARP, HENRY was arrested for evading arrest/detention with a vehicle by Macias, who also acted as the complaining witness. The case was dismissed because it could not be proven beyond a reasonable doubt.

On 5/7/2021, DUGAR, JAVONTRE was arrested for evading arrest/detention by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

Certified Document Number: 124268254 - Page 25 of 52

On 4/10/2021, ANTUNEZ, EDGARDO was arrested for evading arrest/detention with a vehicle by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 4/11/2021, ANTUNEZ, EDGARDO was arrested again for fleeing/attempting to elude police officers by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 7/2/2021, MENENDEZ, FRANKLIN was arrested for failing to identify to police / false information by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 10/10/2021, BROWN, BRITTANIE was arrested for attempted assault of a peace officer by Macias, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 1/21/2022, ABREGO ROMERO, MARCOS was arrested for evading arrest/detention with a vehicle by Macias, who also acted as the complaining witness. The case was dismissed because it could not be proven beyond a reasonable doubt.

On 1/27/2022, AZIZ, AMAD was arrested for evading arrest/detention by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 2/27/2022, HAWTHORNE, ARRYON was arrested for failing to identify to police / false information by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 8/19/2022, THOMPSON, MARQUIS was arrested for evading arrest/detention by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 9/30/2022, EDWARDS, THADDEAUS was arrested for failing to identify to police / false information by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 11/11/2022, MONTOYA, RAEDYN was arrested for evading arrest/detention by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 7/14/2023, FELIX, KEANDRE was arrested for failing to identify to police / false information by Macias, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 6/11/2023, BRANTLEY, KENDRICK was arrested for failing to identify to police officer,  fugitive by Macias, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 3/1/2023, BROWN, MARCUS was arrested for evading arrest/detention with a vehicle by Macias, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 4/12/2023, GREEN, LOGAN was arrested for interfering with duties of a public servant by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 3/8/2024, JONES, ANTHONY was arrested for failing to identify to police officer, fugitive by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 3/24/2023, WILDER, OBIE was arrested for interfering with duties of a public servant by Macias, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 5/2/2024, FORD JR., ANTHONY JAMES was arrested for evading arrest/detention by Macias, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 5/23/2024, GAUDIELLO, DAVIDENTIFY was arrested for evading arrest/detention by Macias, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 9/19/2024, NICHOLS, COREY was arrested for interfering with duties of a public servant by Macias, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 11/7/2024, SISTO, SUNNY was arrested for evading arrest/detention by Macias, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 7/18/2021, PERKINS, TAQUERIA was arrested for interfering with duties of a public servant by Deputy Jonathan Gonzalez, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 12/30/2021, BELL, CHASITY NICOLE was arrested for interfering with duties of a public servant by Gonzalez, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 8/4/2023, GARZA, GINO was arrested for evading arrest/detention by Gonzalez, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 4/21/2021, SCOTT, HORACE was arrested for evading arrest/detention with a vehicle by Gonzalez, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 5/15/2021, FAISON, BRANDON was arrested for assault of a peace officer by Gonzalez, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 5/16/2021, FAISON, BRANDON was arrested again for assault of a peace officer by Gonzalez, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 4/2/2021, PRICE, ROKEISHA ROSHA was arrested for failing to identify to a police officer / false information by Gonzalez, who also acted as the complaining witness. The case was dismissed because it could not be proven beyond a reasonable doubt.

On 3/5/2022, HUNTINGTON, DEVAUGHN was arrested for fleeing/attempting to elude police officers by Gonzalez, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

Certified Document Number: 124268254 - Page 29 of 52

On 7/18/2023, PAUL, TROY was arrested for failing to identify to a police officer / false information by Gonzalez, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 7/19/2023, HOLMAN, QUINDARIUS MARQUIL was arrested for interfering with duties of a public servant by Deputy Martin Garcia, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 6/27/2020, BROOKS, LEE was arrested for interfering with duties of a public servant by Garcia, who also acted as the complaining witness. The case was dismissed because it could not be proven beyond a reasonable doubt.

On 1/25/2023, HENRY, EMMANUEL SHEPHERD was arrested for evading arrest/detention by Garcia, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 4/4/2024, AGUIAR-MARTINEZ, LUIS A. was arrested for evading arrest/detention with a vehicle by Garcia, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 12/12/2020, TELLO, PABLO OSCAR was arrested for failing to identify to a police officer / false information by Deputy Noe Aguirre. The case was dismissed for lack of probable cause.

On 8/6/2019, BENAVIDEZ, MARK ANTHONY was arrested for failing to identify to a police officer / false information by Deputy Brandon Branch, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 11/11/2019, BROWN, JOSEPH was arrested for failing to identify to a police officer / false information by Branch, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 3/21/2020, LOZANO, KARINA was arrested for resisting arrest/search by Branch, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 3/28/2020, CAREY, DUWAN was arrested for interfering with duties of a public servant by Branch, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 6/25/2020, WILLIAMS, JOENIQUE was arrested for interfering with duties of a public servant by Branch, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 9/1/2020, GABLE, TRAVIS was arrested for interfering with duties of a public servant by Branch, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 10/14/2020, SIERRA, ALDOLFO was arrested for interfering with duties of a public servant by Branch, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 11/2/2021, WARFORD, KEONDREA was arrested for resisting arrest/search by Branch, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

Certified Document Number: 124268254 - Page 31 of 52

On 5/10/2022, FLORES, CLAUDIA was arrested for interfering with duties of a public servant by Branch, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 7/22/2020, DURAN, JULIAN was arrested for resisting arrest/search by Branch, who also acted as the complaining witness. The case was dismissed in the interest of justice, which would have resulted in acquittal at trial.

On 12/28/2020, DEROUSSELLE, GEOWANDA was arrested for resisting arrest/search by Branch, who also acted as the complaining witness. The case was dismissed because it could not be proven beyond a reasonable doubt.

On 2/14/2023, HUMBLE, SHANTALACE ZISZELLE was arrested for interfering with duties of a public servant by Deputy Steven Carpenter, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 6/12/2023, REID, DEONTA SEMAJ was arrested for failing to identify to police officer, fugitive by Carpenter, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 7/26/2023, NJOKU, JUDE was arrested for interfering with duties of a public servant by Carpenter, who also acted as the complaining witness. The case was dismissed for lack of probable cause.

On 6/19/2024, RETTA, HECTOR was arrested for failing to identify to police officer / false information by Carpenter, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 4/12/2024, MOORE, CAYDEN MICHAEL was arrested for evading arrest/detention by Carpenter, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

On 11/7/2024, MATTHEWS, BRANDON JAMES was arrested for evading arrest/detention by Carpenter, who also acted as the complaining witness. The case was dismissed based on insufficient evidence of guilt.

The following are additional instances of arrests without probable cause by Harris County deputies—cases dismissed based on lack of probable cause or insufficient evidence—which further demonstrate that these practices are systemic and that the County's failure to train, retrain, or discipline is the moving force behind Brown's unconstitutional arrest:

On 3/7/2018, CHASE ROSHAD BROOKS was arrested by Deputy George Lopez for interference with public duties. On 3/9/2018, a magistrate judge found no probable cause.

On 8/10/2018, NICHOLAS WAYNE ALVAREZ was arrested by Deputy Desmond Spivery for interference with public duties. On 4/24/2019, the judge found no probable cause.

On 8/11/2018, CORA YVONNE SHORES was arrested by Deputy Roland Rodriguez for failure to identify. On 8/13/2018, a magistrate judge found no probable cause.

On 4/28/2018, MAXIM IVSHIN was arrested by Deputy Stepha Quintanilla for interference with public duties. On 4/30/2018, a magistrate found no probable cause and the case was dismissed.

Certified Document Number: 124268254 - Page 33 of 52

On 7/7/2018, TRAVIS AARON SHUMATE was arrested by Deputy Chris Wilkerson for evading arrest as the sole witness. The case was dismissed on 7/9/2018 after a magistrate found no probable cause.

On 7/7/2018, DENECIA MCCUTCHEON was arrested by Deputy Jordan Reinert for evading arrest as the sole witness. The case was dismissed on 7/9/2018 after a magistrate judge found no probable cause.

On 7/15/2018, MIGUEL ANGEL ALBARRAN was arrested by Deputy Richard Burgess for evading arrest as the sole witness. The case was dismissed on 7/16/2018 because the magistrate judge found no probable cause.

On 3/6/2018, BRANDON JAMES MILAM was arrested by Deputy Gerardo Tuerina for failure to identify. On 7/3/2018, a magistrate judge found no probable cause.

On 3/3/2018, JAMARCUS MCGILBRAY was arrested by Deputy Melynda Martinez for interference with public duties. On 3/9/2018, a magistrate judge found no probable cause.

On 5/8/2018, JORGE ROQUE PEREZ was arrested by Deputy Stephanie Rios for interference with public duties. On 5/9/2018, a magistrate judge found no probable cause.

On 2/14/2018, JORGE MONZON was arrested by Deputy Susan Hernandez for failure to identify. On 2/15/2018, the criminal court dismissed the case because no probable cause existed to believe he committed the offense.

On 7/7/2018, RENOIR DONYALE WARNER was arrested by Deputy Ruben Gonzalez for evading arrest as the sole witness. The case was dismissed on 7/9/2018 because no probable cause existed.

Certified Document Number: 124268254 - Page 34 of 52

34

On 7/4/2018, STEPHEN AARON THOMAS was arrested by Deputy Andre Tran for evading arrest as the sole witness. The case was dismissed on 7/6/2018 because no probable cause existed.

On 2/7/2018, RAMIRO RUIZ PEREZ was arrested by Deputy Manuel Martinez IV for failure to identify. On 2/13/2018, the case was dismissed because no probable cause existed.

On 5/8/2018, DEREK HANSON was arrested by Deputy Jose Paiz for interference with public duties. On 5/9/2018, the case was dismissed because no probable cause existed.

On 2/17/2018, SHANNILL MONIQUE GIPSON was arrested by Deputy Rawltyn Hart for interference with public duties. On 2/19/2018, the case was dismissed because no probable cause existed.

On 7/5/2018, YVONNE LEE PEREZ was arrested by Deputy Clinton Nash for failure to identify. On 7/9/2018, the case was dismissed because no probable cause existed.

On 4/28/2018, ISRAEL ALEJANDRO WING was arrested by Deputy Ronny Keener Jr for interference with public duties. On 4/30/2018, the case was dismissed because no probable cause existed.

On 3/7/2018, KATIE I. JACOBS was arrested by Deputy Gerardo Tuerina for failure to identify. On 7/3/2018, the case was dismissed because no probable cause existed.

On 4/28/2018, REGINA CASTILLO-FLORES was arrested by Deputy Dakota Pennick for interference with public duties. On 4/30/2018, the case was dismissed because no probable cause existed.

On 3/2/2018, LILLIE R. ECHOLS was arrested by Deputy Braxton Turner for evading arrest as the sole witness. The case was dismissed on 3/5/2018 because no probable cause existed.

On 3/11/2018, Deputy Shamanada Harris arrested KENEAU LAYMOND, CHRISTOPHER BONNER, and AKIA LAYMOND for interference with public duties. On 3/13/2018, the case was dismissed because no probable cause existed.

The failure to investigate, retrain, discipline, or supervise these deputies, who continued to act as complaining witnesses even after multiple prior false arrests and unconstitutional conduct, promoted a culture, custom, and practice of unreasonable force and unlawful arrests against citizens. Sheriff González and Harris County did not take the basic steps that would be expected in any large organization: discipline the officers responsible, use them as examples to deter similar misconduct by others, and implement policies to detect and correct these patterns. The high rate of dismissals, particularly dismissals based on a lack of probable cause or insufficient evidence where the arresting officer is also the sole complaining witness, shows a pattern of overreach and a systemic failure to ensure that constitutional limits on arrest authority are respected. These instances underscore the urgent need for robust policies to discipline, train, retrain, audit, and reform HCSO practices to prevent future violations. Despite this detailed record of ongoing, pervasive unlawful arrests and false complaints by the same deputies, Sheriff González and Harris County failed to properly investigate, train, retrain, or discipline them. This failure to retrain or sanction the deputies was the direct cause and moving force behind the violation of Plaintiffs' constitutional rights. Had Sheriff González and Harris County investigated, retrained, disciplined, and supervised their deputies after prior unconstitutional conduct, Plaintiffs would not have suffered the violations at issue. Like employees in any workplace, HCSO deputies are influenced by the presence, or absence, of meaningful disciplinary consequences. When there is a real threat of discipline for violating policy,

36

employees are more likely to follow the rules. When there is little or no risk of discipline, employees are more likely to disregard established policies, including constitutional requirements. The lack of accountability and enforcement of HCSO policies directly contributes to a culture where constitutional violations are more likely to occur. Harris County and Sheriff González have not implemented any meaningful policy or system to review arrests for probable cause, to audit dismissals based on lack of probable cause, or to follow up those dismissals with discipline after training or retraining.

For example, Deputy Rawltyn Hart has had an unusually high number of arrests as a complaining witness (82), and was previously found to have a "throw-down" gun concealed in his squad car. He was terminated but Gonzalez later rehired him. Deputies such as Hart and Bolin must be disclosed in criminal cases under Brady obligations on the criminal side as problematic, yet they remain in positions to arrest without retraining or discipline where they continue to put the public at risk of unlawful arrest. The repeated constitutional violations by deputies are a direct result of Harris County's and its policymakers' refusal to address unlawful conduct is significant.

The County has no policy requiring random or routine review of body-worn camera footage, dash-cam footage, or surveillance video to detect misconduct and respond with retraining or discipline when violations are identified. Supervisors are trained, pursuant to HCSO policy, to review deputies' statements after significant incidents and ensure that those statements do not conflict before being "accepted," often sending statements back to deputies for revision to correct contradictions. Supervisors also have the power to destroy camera footage and have engaged in that practice, later claiming that video is no longer available.

In a sheriff's office of this size and housing the nations' third largest city, the consistent pattern of arrests without probable cause by the same deputies, the corresponding dismissals, the lack of any meaningful internal discipline, and the structural practices that sanitize officer statements and allow

destruction or loss of video evidence together establish a "persistent and widespread" custom—not isolated mistakes. That custom, and the deliberate indifference to it by Harris County and Sheriff González, is the moving force behind Brown's unlawful, false arrest and resulting false imprisonment.

Additionally, to the extent Sheriff Gonzalez personally knew of or directed these actions approving and ordering the no-visitation orders although Chance has not been arrested, detained or arraigned and no charges were pending against him, he is individually liable based on his personal involvement. Even if he was not personally involved, the Monell claim holds the County liable for the actions of its employees that were taken pursuant to County policy (written or unwritten), lack of policy, practice, pattern *(not and)* custom. Harris County has a practice of arresting individuals without probable cause.

As a direct result of Defendants' actions, the Plaintiffs suffered a loss of consortium for the temporary but significant loss of the society, comfort, and aid of their son when it was needed most. They experienced serious mental anguish, fear, and trauma from being separated and kept uninformed. While Texas state tort law might not compensate parents for such an injury when the child survives, federal law does provide a remedy when state officials unjustifiably intrude on the parent-child relationship in a manner that "shocks the conscience." Plaintiffs assert that this conduct meets that standard.

Therefore, the Roux Parents seek damages under §1983 for their emotional distress and loss of companionship/association during the period of unlawful interference under the First and Fourteenth Amendments. These damages are personal to them and are apart from Chance's own damages. The Parents also seek punitive damages against any individual actors found to have acted with malice since Sheriff Gonzalez was deliberately indifferent to their rights.

*Negligence and Gross Negligence against Harris County and Mint Medical Physician Staffing, LP dba Mint Physician Staffing.*

Plaintiffs bring claims of negligence and gross negligence against Defendant Harris County under the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code Chapter 101. These claims are based on the non-intentional tortious conduct of County employees in the scope of their employment, for which Harris County has waived sovereign immunity.

Negligent Training/Supervision/Retention: Harris County owed a duty to the public, including Mr. Roux, to exercise reasonable care in the hiring, training, supervision, and retention of its law enforcement officers and jail personnel. The County breached this duty by negligently hiring and/or retaining Deputy Arin Ramirez without proper vetting or despite indications of risk, by failing to adequately train him in use-of-force and conflict de-escalation, and by failing to supervise him appropriately, particularly when assigning him to off-duty security roles. A reasonable county in the same circumstances would have, for example, ensured that a deputy with only a year on the force and involvement in a prior shooting incident received remedial training or was not placed in high-risk assignments. Harris County's negligence in this regard proximately caused Chance's injuries. If Deputy Ramirez had been properly trained or supervised, the shooting might have been avoided.

Similarly, Harris County and Mint Medical Physician Staffing was negligent in its training and supervision of jail staff and medical personnel regarding inmate medical care and family communications. The jail employees' failure to follow medical directives and their harsh treatment of the Roux family, threatening arrest, giving no information, reflect a lack of training in humane and proper procedures. A reasonably careful sheriff's department would instruct its officers on how to handle family inquiries lawfully and compassionately, and would train jail medical staff to strictly

adhere to doctors' orders for post-surgical inmates. The lack of such training was a proximate cause of the harm to Chance's worsened medical condition and his parents emotional distress.

### Negligent Provision of Medical Care.

To the extent it is not deemed an intentional violation, the denial of adequate care to Chance in the jail also constitutes negligence by HCA, County Mint Medical Physician Staffing employees, nurses, doctors, jailers. Harris County, Mint Medical, via its employees, had a duty to care for the inmates' health and provide medication and other pharmaceuticals to address Chance's serious medical needs. The acts of failing to provide medicine, failing to change bandages, etc., were breaches of the standard of care and of the duty owed to Chance. These negligent omissions proximately resulted in pain, potential infection, and other damages to Chance.

As an alternative claim, under the TTCA, Harris County's immunity is waived for personal injury "caused by a condition or use of tangible personal property" by government employees if a private person would be liable in such circumstances. Ramirez shot Chance with bullets and a gun that was tangible property of Harris County in a grossly negligent manner under the mistaken belief that he had the right to shoot Chance since he erroneously believed that Chance had pointed a weapon at him and others. This is the only reason Ramirez shot at Chance, according to Ramirez, and based on his poor vision Chance was nearly killed.

Plaintiffs' claims against Ramirez are grounded in assault and battery as well. These intentional tort claims, based on ultra vires acts, are independent of the intentional excessive force claim, which is brought via §1983 against the individual deputy. Thus, no TTCA exception bars these negligence claims, and Harris County's immunity is waived to that extent.

Plaintiffs further allege that Harris County's conduct, especially in failing to address known risks with Ramirez and in denying critical medical care, amounted to deliberate indifference. The County at the time of the events, involved an extreme degree of risk, considering the probability and

magnitude of the potential harm, and of which the County had actual, subjective awareness but proceeded with deliberate indifference to the need to train Ramirez.

Further, Harris County was actually aware of Ramirez's prior shooting yet consciously ignored the risk of another incident, and the need to discipline or retrain him on the constitutional limits of providing medical care when he caused the need for care, or deny permission to work an off duty extra job. He was an extreme risk of deadly harm to the public. Likewise, the County was aware that withholding medical care from a post-surgery inmate carried an extreme risk of serious harm or death, yet Ramirez, the jail staff and supervisors were indifferent to that risk. These meet the definition of deliberate indifference to Mr. Roux serious medical needs.

As a direct and proximate result of Harris County's negligence and gross negligence, Mr. Roux suffered injuries and damages as described, and the Roux Parents suffered damages in the form of medical care and emotional distress. Therefore, Plaintiffs seek to hold Harris County liable for actual damages under Texas law. Additionally, Texas law does not permit exemplary damages against a government unit like Harris County, defendants acted with gross negligence. Plaintiffs' claim for punitive damages against the individual Defendants under other causes of action. No exemplary damages are sought from Harris County due to statutory prohibition.

### *HCA Healthcare, The Corporation Trust Company Negligent Training*

HCA violated federally mandated privacy safeguards by voluntarily providing protected health information to the very law enforcement agency responsible for the patient's gunshot wound, without consent, warrant, subpoena, or exigent circumstances. The conduct constitutes Negligence per se, HIPAA violation, standard of care based on HCA's negligent training and supervision resulting in invasion of privacy, breach of confidentiality, §1983 medical privacy, §1983 unreasonable search violations, and Civil conspiracy with Harris County Sheriff deputies.

Certified Document Number: 124268254 - Page 41 of 52

***Negligent Hiring/Retention and Negligent Security, Against District 249 Bar & Grill***

Plaintiffs assert a claim of negligence, including negligent hiring, retention, and overall security negligence against Defendant District 249 Bar & Grill (hereafter "District 249"). As a private business, District 249 owed its patrons, like Mr. Roux, a duty of reasonable care to protect them from unreasonable risks of harm, including the foreseeable acts of third parties or employees on the premises.

District 249 breached this duty in several ways. Negligent Hiring/Retention of Security Personnel. District 249 hired Deputy Arin Ramirez to provide security at the bar. In doing so, District 249 had a duty to exercise reasonable care in selecting personnel who were fit for the job. Ramirez is off duty unless a crime occurs and no crime occurred or was witnessed by Ramirez, the only crime alleged by Ramirez was Chance assaulting him and others when Chance pointed his gun at them, this was false. Upon information and belief, District 249 either knew or should have known that Deputy Ramirez was not suited to a role requiring sound judgment and restraint. If the bar management was aware of Ramirez's inexperience or prior shooting incident, then hiring or retaining him as a security guard was negligent. Even if they were not aware, they failed to perform due diligence, research was inquiring with HCSO about Ramirez's record or ensuring he had proper temperament for bar security. A prudent bar owner would screen the background of armed security working on its premises. District 249's negligence in hiring/retaining a deputy who was prone to using lethal force foreseeably endangered patrons. This negligence was a proximate cause of Mr. Roux's shooting and injuries, because had a more competent or cautious security guard been in place or had Ramirez been supervised or instructed properly by the bar, the use of deadly force likely would not have occurred.

District 249 Negligent Training and Oversight of Employees.

Certified Document Number: 124268254 - Page 42 of 52

District 249 failed to establish proper procedures and training for its staff including off duty officers, security, bouncers and managers and for coordinating with security personnel. The bar's manager admitted to "breaking protocol" in handling the altercation. Specifically, the manager let the hostile parties exit together, which any competent establishment would know is dangerous. If District 249 had a protocol to separate quarreling patrons and it was not followed, this indicates either lack of training or enforcement by management, a negligent oversight. Additionally, District 249 did not properly coordinate with the off-duty deputies on how to handle such incidents, whether to call for backup from on-duty units or how to de-escalate. This disorganized approach contributed to the chaos and perceived need for gunfire. District 249's negligence in managing the situation was a substantial factor leading to Chance being shot.

Under a premises liability theory, District 249 failed to keep its premises reasonably safe for invitees. In Texas, a business proprietor can be liable for foreseeable criminal or violent acts of third parties if the proprietor does not take reasonable safety measures. Here, a violent confrontation was foreseeable once the argument broke out inside. District 249 had actual knowledge of the potential for violence, its bouncers intervened and instructed the parties to leave because of the altercation. The risk was then exacerbated by the negligent act of letting both sides outside together. Having created or allowed a volatile situation on its property, District 249 did not take adequate steps to defuse it, by having security escort one party off the premises entirely before letting the other out, or by summoning off-duty law enforcement and making false statements to cause the dangerous condition. The "condition" of the premises in this context was effectively one where an unreasonable risk of harm a shootout was developing and not prevented. District 249's lack of adequate security measures and failure to follow basic safety protocols was a proximate cause of Chance's injuries. The shooting occurred on District 249's property as a direct result of these lapses.

District 249's negligence encompasses both its direct negligence in hiring/training/supervision and its premises liability for failing to maintain a safe environment. Under either or both theories, District 249 is liable to Plaintiffs for the damages suffered. A patron like Chance is considered an invitee to whom the highest duty of care is owed. District 249 breached that duty by actions and omissions that a reasonably prudent nightclub/bar would not have committed.

District 249's negligence was a producing and proximate cause of Plaintiffs' damages. Had District 249 exercised due care (hired competent security, enforced proper protocols, and ensured safe handling of disputes), Mr. Roux would not have been shot and the Parents would not have endured the resulting suffering.

Plaintiff C. Roux was an invitee at District 249's establishment on the night of the incident. District 249, as the possessor of the premises, had a duty to inspect for and make safe dangerous conditions on its property or warn invitees of such conditions. The dangerous condition in this case was the combination of a brewing violent altercation among patrons and the presence of armed security that was not properly controlled. This created an environment rife with potential for serious injury, effectively a hazard on the property.

District 249 had actual or constructive knowledge of this danger it created. Its staff witnessed the initial conflict and knew patrons were being ejected under heated circumstances. The bar's management effectively created the dangerous condition by sending hostile parties out together or at least was aware of it and failed to mitigate it. Additionally, District 249 knew it had armed security using firearms on the premises, which, if mishandled, could be deadly,  akin to a dangerous instrumentality on site.

District 249 failed to take reasonable steps to reduce or eliminate the risk. Reasonable steps would have included: separating the fighting patrons (as noted), calling police when weapons became evident rather than relying solely on possibly overzealous off-duty deputies, ensuring that its security

44

personnel were positioned and instructed in a way to minimize crossfire or danger to bystanders, etc. Instead, District 249's actions (or lack thereof) allowed the danger to manifest, ultimately culminating in shots fired in the parking lot, striking Chance.

Under premises liability principles, District 249 is liable because:

(1) a dangerous condition on the premises existed (the uncontrolled violent confrontation and armed response);

(2) District 249 had knowledge or should have had knowledge of it;

(3) Chance, as an invitee, did not have knowledge of the danger greater than the owner's Chance could not anticipate that he would be shot by the bar's security when he walked outside that is not an inherent risk he assumed; and

(4) District 249 breached its duty by failing to make the condition reasonably safe or warn about it. This breach proximately caused Chance's injuries.

Furthermore, Plaintiffs allege that District 249's conduct was not just negligent but grossly negligent, showing a reckless disregard for the safety of patrons. The manager's conscious decision to ignore protocol and the owners' decision to employ inadequate measures in a rowdy bar environment reflect an extreme departure from ordinary care. Therefore, Plaintiffs will seek exemplary damages against District 249.

District 249 holds itself out to the public as a safe, controlled entertainment venue offering food, beverages, social amenities, and on-site security. Through marketing, posted signage, and the general representation inherent in operating a nightlife establishment with employed security personnel, District 249 represents to patrons, including Mr. Roux, that the premises are reasonably safe and District 249 adheres to established safety protocols designed to protect customers. These representations form a core component of the services District 249 sells to its customers. Mr. Roux entered District 249 as a consumer seeking food, beverages, entertainment, and the security services

45

associated with patronage at a commercial bar. District 249 knowingly if not intentionally broke its represented safety protocol and created a dangerous condition that resulted in Chance's injury. On the night of the shooting, District 249 management was aware of an escalating disturbance involving Chance and other patrons. Instead of following its own safety protocol, which required separating hostile parties and staggering their exit times, District 249's manager admitted to "breaking protocol" by forcing Chance and the opposing group to exit the premises together. Chance relied on this protocol to his detriment. This decision placed Chance directly in harm's way, created a foreseeable risk of violence, violated industry-standard bar security practices, and contradicted District 249's representation that it would take reasonable safety measures to protect paying patrons. District 249 failed to disclose known and created safety risks to Chance. District 249 knew a heated confrontation was underway against Chance; Chance was being followed by hostile individuals; Off-duty deputies with firearms were being used as bar security; these deputies had little to no oversight or verified training for nightlife crowd management; and that forcing all involved parties into the same parking lot at the same time was a foreseeable risk of danger and harm. Despite knowing these facts, District 249 failed to disclose these dangers to Chance before forcing him out of the bar so he could make alternative safety decisions. Chance exited the bar with no warning that bar management had eliminated safety protocols and placed hostile individuals immediately behind him and before his companion. District 249 employed a reckless Off-Duty deputy who was unfit and dangerous. District 249 chose to employ Harris County Deputy Arin Ramirez as "security." Unbeknownst to patrons, Deputy Ramirez had already been the subject of a prior felony-level shooting investigation, and false arrest; was inadequately trained for de-escalation or bar-security situations; and posed a foreseeable risk of unreasonable or excessive force. District 249 never disclosed that its "security" personnel were not trained by it whatsoever  and had a history of dangerous and violent conduct. Patrons were led to believe they were protected by competent

security professionals, when in truth they were exposed to a heightened danger. District 249 misrepresented the nature and competence of its security services offered. District 249 knowingly invited patrons to rely on its purported security structure. In reality its security was insufficient, deputies were unsupervised, safety protocols were ignored, conflicts were escalated rather than diffused, and the atmosphere was unsafe for reasonable patrons. By holding out, employing, and deploying security personnel, District 249 represented that it had vetted and trained its security, implemented policies to keep patrons safe, and used security to protect, not endanger, customers. These representations were false, misleading, and deceptive. District 249's conduct was unconscionable. District 249 took advantage of Chance's lack of knowledge of internal safety protocols, the true nature of its hired security personnel, the existence of hostile patrons exiting behind him, and the violent tendencies and dangerous history of the security officers. District 249's actions were grossly unfair, because it knowingly exposed Chance to a foreseeable deadly-force situation; permitted unqualified, armed deputies to engage patrons; escalated a manageable conflict through negligence and mismanagement; and broke protocol in a way that directly led to the shooting. District 249's wrongful conduct was a producing cause of Chance's injuries. The shooting of Mr. Roux would not have occurred had District 249 followed its safety protocol, separated the parties, disclosed the inherent risks, provided proper security, and not placed Chance in a situation guaranteed to escalate. District 249's misrepresentations, nondisclosures, and unconscionable conduct were a producing cause of Chance being civilly assaulted by the other patrons, shot in the abdomen by security, the resulting surgeries and massive injuries, and the emotional trauma and expenses incurred by both Chance and his family.

District 249's acts were knowing and intentional within the meaning of Tex. Bus. & Com. Code § 17.45(9) and (13). District 249's management: knew of the dangers created by its inadequate security practices and broken protocols; knew that the presence of armed, under-trained deputies posed

Certified Document Number: 124268254 - Page 47 of 52

foreseeable risks; knew that failing to separate hostile parties would escalate violence; intentionally concealed or misrepresented safety conditions to patrons; and acted with conscious disregard for patron safety. Accordingly, Plaintiffs seek up to three times their damages for mental anguish and economic loss as permitted by § 17.50(b)(1). Plaintiffs seek recovery of their reasonable and necessary attorney's fees, costs, and expenses under Tex. Bus. & Com. Code § 17.50(d).

## Jury Demand

Plaintiffs respectfully demand a trial by jury on all issues so triable. The requisite jury fee will be paid or has been paid.

Plaintiffs further request that the Court issue citation and serve it upon each Defendant in the manner prescribed by law, and that after trial on the merits, judgment be entered in favor of Plaintiffs in accordance with the above.

## Damages

Plaintiffs incorporate all facts and allegations above and state that, as a direct and proximate result of Defendants' conduct, they have suffered the following non-exclusive list of damages, for which Defendants are jointly and severally liable. Mr. Roux has incurred substantial medical bills for the emergency trauma care, surgeries, hospitalization, and follow-up treatment for his gunshot wounds. This includes costs from HCA Tomball hospital, the subsequent hospital that finished his acute treatment, and expenses for rehabilitation, medications, and ongoing care. These expenses continue to accrue, and Plaintiffs seek recovery of all past and future medical expenses.

During his recovery, Mr. Roux was unable to work and lost income. Additionally, his injuries may impair his future earning capacity due to physical limitations or necessary medical appointments. Plaintiffs seek damages for past lost wages and any reduction in future earning potential.

Mr. Roux endured extreme physical pain from the moment of the shooting through his surgeries and recovery. He continues to experience pain related to his injuries. Damages for past and future physical pain and suffering are sought in an amount to be determined by the jury.

The trauma of being shot, nearly dying, and enduring a difficult recovery under harsh conditions has caused Chance severe mental anguish, including emotional distress, anxiety, and potential post-traumatic stress. Similarly, Chance's parents have suffered profound mental anguish witnessing their son's trauma and being kept away during his time of need. Plaintiffs seek compensation for past and future mental pain and anguish for all three Plaintiffs.

The gunshot wound and resultant surgeries have left Mr. Roux with permanent scarring and possibly other disfigurement, surgical scars, bullet wound scars. He also has past and ongoing physical impairment, a loss of normal function or mobility while recovering and long-term permanent injuries. Plaintiffs seek damages for past and future disfigurement and physical impairment.

The Roux Parents seek damages for the loss of companionship, society, and comfort of their son during the period he was kept isolated from his family. The deprivation of the normal parent-child relationship caused them significant harm, and they seek recovery for this loss of familial association.

The Roux as parents expended funds for their son's benefit because of Defendants' actions, including costs related to traveling to hospitals, lodging, and securing special medical supplies or services once he was home. They also paid unfundable bond money to free Chance from jail, a debt that he incurred and owes, fees paid to bondsmen and criminal lawyer fees related to the malicious prosecution, expunction costs, and cost of complaining with bond conditions.

Plaintiffs seek punitive damages against the individual Defendants, Ramirez, Sheriff Gonzalez, Jail Medical Director, HCA, Physician Resources, Inc., Mint Medical Physician Staffing, LP dba Mint Physician Staffing, and against District 249 (a private entity) due to the willful, wanton, malicious, or

grossly negligent conduct that occurred. Deputy Ramirez's reckless disregard for life, the Jail Medical Director's callous indifference to inmate health, and District 249's gross negligence in safety justify an award of exemplary damages to punish and deter. Plaintiffs seek an amount of punitive damages to be determined by the jury, sufficient to make an example of such misconduct (within the limits, if any, imposed by law). Plaintiffs do not seek punitive damages from Harris County (per statutory and case law immunity for punitive damages against governmental entities).

Attorneys' Fees: For the 42 U.S.C. § 1983 claims, Plaintiffs seek to recover their reasonable attorneys' fees and court costs under 42 U.S.C. § 1988, as this action is to enforce important federal civil rights. Additionally, any other statutory basis for fees is invoked. Plaintiffs will submit proof of reasonable fees if and when they prevail.

Pre- and Post-Judgment Interest: Plaintiffs seek pre-judgment interest as allowed by law on all applicable damages, and post-judgment interest at the maximum legal rate on the final judgment until paid. Plaintiffs seek all costs of court incurred in this suit.

The damages sought are within the jurisdictional limits of this Court. At this time, Plaintiffs would show that they seek monetary relief in excess of $1,000,000, including both economic and non-economic damages, and punitive damages as allowed.

Accordingly, Plaintiff Mr. Roux seeks to hold Deputy Ramirez liable under 42 U.S.C. § 1983 for compensatory damages for his physical injuries, pain and suffering, mental anguish, and punitive damages, as well as reasonable attorney fees and costs under 42 U.S.C. § 1988.

Exemplary damages are warranted to punish Deputy Ramirez and to deter such outrageous conduct in the future, as his actions exhibited callous indifference to constitutional rights.

## **Prayer**

Plaintiffs C. Roux and his parents pray that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiffs have and recover judgment against Defendants as follows Actual

Certified Document Number: 124268254 - Page 50 of 52

Damages in an amount to compensate Plaintiffs fully for their losses, including economic damages medical expenses, lost wages, other out-of-pocket costs and non-economic damages pain, suffering, mental anguish, disfigurement, as described above;

ExemplaryDamages against the individual and private Defendants, in an amount sufficient to punish their misconduct and deter similar conduct in the future, to the extent allowed by law and as determined by the jury;

Attorneys' Fees pursuant to 42 U.S.C. § 1988 and any other applicable law, in an amount to be proven at trial, for the necessity of hiring legal counsel to vindicate Plaintiffs' rights in this action;

Pre-Judgment Interest on all applicable damages, from the earliest date allowed by law until the date of judgment, at the lawful rate;

Post-Judgment Interest on all sums awarded, from the date of judgment until paid, at the maximum rate allowed by law;

Court Costs and all costs of suit expended by Plaintiffs; and such other and further relief to which Plaintiffs may be justly entitled, whether at law or in equity, including but not limited to declaratory and injunctive relief as may be necessary to ensure these wrongs do not occur again.

Respectfully submitted,
By: /s/ U.A. Lewis
U.A. Lewis
Texas State Bar No. 24076511
Federal Bar Number 1645666
The Lewis Law Group
P.O. Box 27353
Houston, TX 77227
T: (713) 570-6555
F: (713) 581-1017
myattorneyatlaw@gmail.com

Certified Document Number: 124268254 - Page 51 of 52

51

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

U.A. Lewis on behalf of U.A. Lewis
Bar No. 24076511
myattorneyatlaw@gmail.com
Envelope ID: 109346245
Filing Code Description: Petition
Filing Description: Petition
Status as of 12/22/2025 8:41 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| office@thelewislaw.com office@thelewislaw.com | | office@thelewislaw.com | 12/22/2025 4:18:33 AM | SENT |

Certified Document Number: 124268254 - Page 52 of 52



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 27, 2026

Certified Document Number:        124268254 Total Pages:   52

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

CAUSE NO.  202595044
RECEIPT NO.  1096707          85.00      CO1
**********          TR # 74592464

*1H12*

*P.3*

PLAINTIFF: ROUX, LISA
vs.
DEFENDANT: RAMIREZ, ARIN (DEPUTY)

In The 215th
Judicial District Court
of Harris County, Texas
215TH DISTRICT COURT
Houston, TX

CITATION

THE STATE OF TEXAS
County of Harris

**FILED**
Marilyn Burgess
District Clerk

JAN - 6 2026
Time: _8:00_ _am_
Harris County, Texas
By _R TICKLE_
Mail Processing Clerk

TO: HARRIS COUNTY TEXAS (A TEXAS GOVERNMENTAL UNIT) MAY BE SERVED THROUGH
    THE HARRIS COUNTY JUDGE LINA HILDALGO
    1001  PRESTON ST SUITE 911   HOUSTON  TX  77002
    Attached is a copy of <u>PLAINTIFF'S ORIGINAL PETITION</u>

This instrument was filed on the <u>22nd day of December, 2025</u>, in the above cited cause number
and court. The instrument attached describes the claim against you.

        YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
        This citation was issued on 30th day of December, 2025, under my hand and
seal of said Court.

ENTERED _RT_
VERIFIED _____

<u>Issued at request of</u>:
LEWIS, U A
PO BOX  27353
HOUSTON, TX  77227
Tel: (713) 570-6555
<u>Bar No.</u>: 24076511



MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: CREAG, YASMIN NASHAY  605//13048142

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M., on the _____ day of _____, _____.

Executed at (address) _____ in

_____ County at _____ o'clock ____.M., on the _____ day of _____,

_____, by delivering to _____ defendant, in person, a

true copy of this Citation together with the accompanying _____ copy(ies) of the

_____ Petition

attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, _____.

FEE: $_____

_____ of _____County, Texas

_____          By _____
        Affiant                                    Deputy

On this day, _____, known to me to be the person whose
signature appears on the foregoing return, personally appeared. After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited on the
return.

SWORN TO AND SUBSCRIBED BEFORE ME, on this _____ day of _____, _____.

_____
                Notary Public

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging.

N.INT.CITR.P          *74592464*

Certified Document Number: 124472817 - Page 1 of 3

## Constable Return of Corporation

Cause #: __202595044__                                          Tracking #: __74592464__

In the case of __ROUX, LISA__ VS __RAMIREZ, ARIN (DEPUTY)__ a __CITATION__ and attached __PLAINTIFF'S ORIGINAL PETITION__ was issued by the __215th Judicial District__ court of __HARRIS__ County, and came to hand on the __31__ day of __December__, __2025__ at __11:38AM__ to be delivered at __1001 Preston St__, __Houston__, TX __77002__ by delivering to: __HARRIS COUNTY TEXAS (A TEXAS GOVERNMENTAL UNIT) MAY BE SERVED THROUGH THE HARRIS COUNTY JUDGE LINA HIDALDO__

### Attempted Service

### (Attempted service at 1001 Preston St  unless otherwise noted.)

| Date | Time | Deputy Name | Agency | Service Attempt Type | Address Attempted | Remarks |
|------|------|-------------|--------|---------------------|-------------------|---------|
| 1/5/2026 | 10:31:25 AM | ELBERT LOGAN | 1 | SERVED | 13013 NORTHWEST FWY HOUSTON Tx 77040 | SERVED MEGAN DELLORTO |

### Service of Corporation

Executed the same in __HARRIS__ County, Texas, on the __5__ day of __January__, __2026__ at __10:31AM__ by summoning __HARRIS COUNTY TEXAS (A TEXAS GOVERNMENTAL UNIT) MAY BE SERVED THROUGH THE HARRIS COUNTY JUDGE LINA HIDALDO__ a Corporation at __1001 Preston St__, __Houston__, Texas __77002__ By delivering to __MEGAN DELLORTO__ in person the __Assistant Legal Counsel__ of said Corporation a true copy of this __CITATION__, together with the accompanying certified copy of the __PLAINTIFF'S ORIGINAL PETITION__

Fee Due $ _____0.00_____

by Deputy __ELBERT LOGAN - 1H12__
                    Printed

Deputy Signature _____

Attempts: _____1_____

Total Attempts: _____1_____

**Alan Rosen , Constable Precinct #1**

**Harris County Texas**

1302 Preston, 3rd Floor
Houston Texas 77002
7137555200



County Auditor's Form/9999A
Harris County, Texas (Rev 04/01)

**Official Receipt**

101 NO. 1096707

**MARILYN BURGESS DISTRICT CLERK**

Action : NO FEE DOCUMENTS NOT ANSWERS       Case: 202595044-7       Trans ID: 416344870       Court: 215

Style    PLT: LISA ROUX
         DEF: RAMIREZ, ARIN

| Fee | Description | Amount |
|---|---|---|
| 121 | CITATION WITH 1 COPY | $8.00 |
| 350 | CONST-PERSONAL SERVICE | $85.00 |
| 722 | COPIES - PAPER PRINTED | $52.00 |

Payment  Texas.gov Visa        42636/1/2029        $145.00
Amount Tendered :                                  $145.00
Payment Amount:                                    $145.00
Amount Applied:                                    $145.00
Change Amount:                                       $0.00

Received        THE LEWIS LAW GROUP, PLLC        10029415
Of              16055 SPACE CENTER BLVD STE 190
                HOUSTON, TX  77062
ONE HUNDRED FORTY FIVE  AND 00/100 ************************Dollars

Payment Date: 12/29/2025               File Date: 12/22/2025

Customer Signature  _____

Assessed By: USER, CONVERSION
Validated: 12/29/2025       By :SYSTEM GENERATED, Texas.gov 101
Manual Receipt Nbr: 1

Comment:  Envelope number: 109481462 - 1

Certified Document Number: 124472817 - Page 3 of 3



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 27, 2026

Certified Document Number:        124472817 Total Pages:  3

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**